UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DESHAWN JONES                                                    CIVIL ACTION

VERSUS                                                           NO.  16-1745

FAVIS SPENCER, ET AL                                             SECTION "B"(4)

<u>REPORT AND RECOMMENDATION</u>

Before the Court are the **Motion to Dismiss (Rec. Doc. No. 20)** filed by the Defendant City of New Orleans and the **Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State Claim (Rec. Doc. No. 30)** filed by the Defendants, Nurse Favis Spencer and Nurse Lesia Washington.  The motions and the entire matter were referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2)**, and **§ 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and(2)**.  On April 21, 2016, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the Plaintiff appearing in person and counsel for the Defendants participating by telephone.[2]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims.  The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 13.  The hearing was digitally recorded.

# I.    Background

## A.    Original Complaint

The Plaintiff, DeShawn Jones ("Jones"), is an inmate who is currently housed at Winn Correctional Center ("WCC") in Winnfield, Louisiana.[3]  Jones filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against defendants, the Orleans Parish Police Jury, the City of New Orleans, and Orleans Parish, and defendants Nurse Favis Spencer, Orleans Parish Sheriff Marlin N. Gusman, Nurse Lesia Washington ("Nurse Washington"), Warden Chavez Ruiz, Secretary of the Louisiana Department of Corrections ("DOC") James LeBlanc, and Captain Franklin, each in their individual and official capacities.[4]

Jones alleges that on December 18, 2014, he was shot in the leg prior to incarceration and suffered an injury that required surgery to repair his broken fibula bone.  He further asserts that on February 3, 2015, his physician ordered him to use a walker.  In February of 2015, Jones was placed in the Orleans Parish Prison.  Jones claims that he informed Defendants Nurse Spencer, Nurse Washington, and Captain Franklin that his leg was infected, swollen, and as a result caused him great pain.

Jones claims that he saw a prison doctor within 14 to 21 days after his request for medical attention.  Jones alleges that when he finally saw the prison doctor, he was rushed to the hospital to have emergency surgery to replace a medal rod and drain the infection in his leg.  Jones further alleges that, after surgery, he suffered with high fever, body chills, and had to have "PICC"[5] lines

---

[3]Rec. Doc. No. 3.

[4]Rec. Doc. No. 5.

[5]A PICC line is a peripherally inserted central catheter which is a central venous catheter inserted into a vein in the arm rather than a vein in the neck or chest.  It is used to gives medicines into a vein near the skin.

placed in his arms to pump the antibiotics into his body.  He further asserts that the PICC line became infected due to the unsanitary practices and conditions at the prison.

Jones avers that on August 3, 2015, defendants Spencer and Franklin caused his wheelchair to be taken from him.  Jones alleges that Nurse Spencer and Captain Franklin possessed knowledge that use of a wheelchair was ordered by his doctor, without any alternatives.  He asserts that without the wheelchair, he suffered pain on standing and walking on his broken leg.

He further contends that the lack of treatment for his condition was related to the filing of grievances against Defendants Washington and Spencer.  He also asserts that he now walks with a permanent limp and discomfort due to the Defendants' inaction and delay in providing adequate medical attention.

Jones also claims that Defendants Washington and Spencer are individually and collectively liable for the deprivation and undue delay in seeing the prison doctor.  He further indicates that Orleans Parish is liable for the failure to properly train and supervise its nursing staff in the proper monitoring and care of its prisoners with PICC lines inserted in them.

According to the complaint, DOC Secretary LeBlanc neglected his duty to assure that Jones received adequate medical attention after being notified of the problems at OPP.  Jones further alleges that Orleans Parish, the City of New Orleans, and Sheriff Gusman were aware of the alleged unsanitary nature of the prison and the deprivation of needed medical care.

As relief, Jones requests $350,000 in compensatory damages, $20,000 in punitive damages from each defendant, the appointment of counsel, and the appointment of an expert medical witness.  He further requests that the Court exercise pendent jurisdiction to hold defendants liable under state law.

B.      The *Spears* Hearing

Jones testified that he underwent surgery on his leg on December 18, 2014 as the result of a gunshot wound that broke his fibula.  He further testified that, prior to his incarceration, he attended regular medical checkups and was taking pain medication.  He also had been given a walker to get around.  After his arrest in February of 2015, he was examined and placed in the medical tier of the prison.  He was also sent to the interim hospital for regular visits.  The prison doctor gave him a wheelchair to get around in the prison, gave him pain medication ordered by the hospital doctor and instructed him to stay off the leg.

He asserted, however, that he did not get the follow-up medical treatment needed. Specifically, Jones stated that he did not see the doctor when he felt he was in pain.  He instead was put on the list for a doctor's visit.  He indicates his belief that he should have been able to see the doctor when he wanted to not when the nurses scheduled the visit.  He felt the timing was slower than he wanted.

He eventually developed an infection in his leg in the Summer of 2015.  Jones stated that the bone was sticking out of his leg, and when he saw the doctor the doctor told him to stay off his leg.  About three weeks before the infection, Nurse Spencer and Captain Franklin took his wheelchair away from him which forced him to walk on his injured leg.  He believed that this is why it got infected from the overuse.  He testified that they took his wheelchair because Nurse Spencer was frustrated with the misconduct of other inmates on the tier.  He stated that other inmates were selling their medication, and were not giving her respect.  She said she took the wheelchair because it was not on his paperwork for him to have the wheelchair.

Jones further testified that, his leg soon became infected because he had to walk with a walker, and the area turned hard, dark in spots, and inflamed.  Jones alleged that he began to beg to see the doctor and to be given pain medication, all to no avail.  Nurse Spencer told him that the

4

pain medication he wanted was not on his chart.  Jones filed a grievance complaint about the pain medication, and he felt the responses he received were meaningless.

Jones stated that he spoke to Nurse Washington about his leg and his need to see a doctor, and she told him she would add him to the doctor's patient list.  He claimed that a week passed and, when he inquired about his appointment, he was informed that Nurse Washington had forgotten to schedule it.  Nevertheless, Nurse Washington got Jones in to see the doctor later the same day.

Jones testified regarding the second surgery on his leg after the infection.  He had to have the PICC line placed in his arm for treatment of the infection and he was placed on bed rest.  After his return, he was placed in the old part of the jail that was not clean.  Because of that, there were three nurses, but they did not adequately clean and care for the PICC line which resulted in an infection in his arm.

He claimed that he was taken back to the hospital for five days for treatment of the PICC line infection and was returned to a newer part of the jail.  While there, he learned how to care for the PICC line and there has been no reoccurrence of the infection.

Jones further testified that he eventually was transferred to Elayn Hunt Correctional Center, where he was placed on the medical tier for about four months and received adequate medical treatment.  They did a good job with caring for the PICC line there.  He was on the walker when he got to WCC, and is still receiving treatment for his unhealed leg.  He still has drainage from his leg and bandages.  He stated that he is using the walker to help increase use of his leg.

Jones explained that he was told by the medical personnel at University Medical Center that if the antibiotics did not work to heal the infection in his leg, the leg may have to be amputated. For this reason, he decided to pursue this lawsuit against the named defendants.

He stated that he sued the Sheriff because he is in charge of the jail.  He sued the OPPJ although he meant to sue the Warden.  He named Warden Ruiz as a defendant, because he personally informed the Warden about his condition and pain.  Jones indicated that the Warden was busy with moving into the new jail facilities but that he would look into it, and Jones never heard back from him.  He also testified that the nurses were not properly supervised because they tell the doctors what to do and do not really care for or respect the inmates.

### C.    Motion to Dismiss Filed by the City of New Orleans (R. Doc. 20)

The City of New Orleans seeks dismissal of the claims against it on the grounds that Jones has failed to allege a claim for which relief can be granted.  The City asserts that Jones has failed to establish municipal liability under the standards set forth in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), and its progeny.  Specifically, the City alleges that Jones has failed to point to a policy or custom of the City which resulted in a violation of his constitutional rights.  In addition, the City asserts that it does not have policies controlling or limiting the access to medical care in OPP and does not train the employees at the prison in the administration of medical care.

### D.    Motion to Dismiss filed by Spencer and Washington (R. Doc. 30)

Nurses Spencer and Washington have alleged that Jones has failed to state a claim for which relief can be granted on several grounds.  First, the defendants assert that Jones has failed to exhaust the Administrative Remedy Process at OPP as required to proceed with this type of suit under § 1983 pursuant to 42 U.S.C. § 1997(e).

In addition, the defendants argue that Jones has not stated a claim against them in their official capacity since he has failed to allege that a violation of his constitutional rights occurred as the result of a municipal policy under *Monell*.  He also has not established that any named defendant is a final policy maker to be held responsible under *Monell*.

Finally, the defendants assert that Jones has failed to set forth a claim of deliberate indifference to his serious medical needs.  Specifically, the defendants point to the fact that Jones was seen by a doctor and sent to the hospital for his infected leg after making complaints.  They also allege that he cannot establish that the removal of the wheelchair and replacing it with a walker amounted to deliberate indifference.  They contend that at best he has raised claims of negligent treatment and simply disagreed with the care he received, none of which is sufficient under § 1983.

## II.   Standards of Review

### A.   Review for Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory

or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

**B.      Review of Motions to Dismiss under Fed. R. Civ. P. 12(b)(6)**

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in the plaintiff's favor. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011) (citing *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Harold H. Huggins Realty, Inc.*, 634 F.3d at 796.  "Factual allegations must be enough to raise a right to relief above the speculative level on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact)." (uppercase and parenthetical in original) *Twombly*., 550 U.S. at 555-56 (quotation marks, citations, and footnote omitted).  Plausible grounds "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Id*. at 556.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id*. (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002)).

In resolving the motion, the court is generally limited to considering only those allegations appearing on the face of the complaint and its proper attachments. *Walch v. Adjutant General's Dep't*, 533 F.3d 289, 293 (5th Cir. 2008).  However, matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may be taken into account. *Chester County Intermediate Unit v. Pennsylvania Blue Shield,* 896 F.2d 808, 812 (3rd

Cir. 1990). "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F. 3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). While conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent the granting of a Rule 12(b) motion to dismiss, such motions are viewed with disfavor and are rarely granted. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997).

Further, the United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards, look beyond the inmate's formal complaint and consider material subsequently filed as amendments to that complaint. *Howard v. King*, 707 F.2d 215 (5th Cir. 1983); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In the prisoner context, in *Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976), the Court explained:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.*, 529 F.2d at 713-14; *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## III.   Frivolousness Review

### A.   Orleans Parish Police Jury

Jones names as a defendant the Orleans Parish Police Jury ("OPPJ"), although he testified that he did not mean to and instead meant to sue the warden. Nevertheless, there is no such entity as the OPPJ within the local government, and it is not an appropriate defendant for suit under § 1983. *Smith v. Gusman*, No. 06-4121, 2007 WL 2407304, at *7 (E.D. La. Aug. 20, 2007) (order adopting report); *Ladnier v. Mollere*, 230 La. 784, 794, 89 So.2d 301, 304 (La. 1956) (recognizing that Orleans Parish is not governed by a police jury); *Duval v. Harvey*, 148 La. 739, 741, 87 So.

9

730, 731 (La. 1921) ("…as is well known, the parish of Orleans is not governed by a police jury, but exists only in name, possessing no government of its own, its territory being wholly absorbed by the city of New Orleans.").

Furthermore, Jones does not set forth any allegation against the "OPPJ," even if such an entity or its equal were to exist.  Section 1983 liability of an entity such as a police jury must be premised upon a custom or policy that caused a constitutional violation.  *Rainwater v. 36th Judicial Court*, No. 06-0346, 2006 WL 2714435, at *3 (W.D. La. Aug. 10, 2006) (citing *Monell*, 436 U.S. at 694).  Plaintiff has not asserted any such allegations of policy or a specific constitutional violation by this Defendant, if such an entity were to exist, and therefore has failed to state a cognizable § 1983 claim.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

The claims against the OPPJ are frivolous and otherwise fail to state a claim for which relief can be granted and must be dismissed pursuant to § 1915(e) and § 1915A.

### B.      The City of New Orleans

Jones names the City of New Orleans as a defendant in this action.  However, he has not identified a basis for the City to be held liable under § 1983 and the claims against these defendants should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.

Local governing bodies like the City of New Orleans are "persons" within the meaning of § 1983 and therefore, are subject to suit under that provision.  *Monell*, 436 U.S. at 694.  However, a local governing body may not be held vicariously liable for the actions of its employees; rather, it can be liable only "when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible."  *Id.*  Similarly, actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they act in execution of an official policy.  *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *on reh'g*, 739

F.2d 993 (5th Cir. 1984); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).

A plaintiff also must identify the particular policy or custom which allegedly caused the deprivation of his constitutional rights. *See, e.g., Murray v. Town of Mansura*, 76 Fed. App'x. 547, 549 (5th Cir. 2003); *Treece v. La.*, 74 Fed. App'x. 315, 316 (5th Cir. 2003).  "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 245 (5th Cir.1993).  A plaintiff also must allege not merely that a unconstitutional policy or custom exists, but that it was the proximate cause of his injury.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 122-24 (1992); *Berry v. McLemore*, 670 F.2d 30, 33-34 (5th Cir. 1982), *overruled on other grounds, Int'l Woodworkers of Am. v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986).  Thus, "'[m]unicipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom.'" *Zarnow v. City of Whichita Falls, Tx.*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)); *Cox v. City of Dallas,* 430 F.3d 734, 748 (5th Cir. 2005) (same).

A policymaker is "one who takes the place of the governing body in a designated area of city administration."  *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).  He or she must "decide the goals for a particular city function and devise the means of achieving those goals."  *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984).  Jones has not identified or named as a defendant any particular policymaker with the authority to make policies on behalf of the City of New Orleans.

Jones also has not pointed to any policy promulgated by the City of New Orleans which led to the alleged violation of his constitutional rights by the prison medical staff.  He also has not

presented or referenced any such policy or provided any indication that the City of New Orleans is responsible for any policies implemented within and by OPP or its medical staff.

Jones has not established any particular pattern or practice condoned by the City of New Orleans or its officials which would amount to an unconstitutional policy at OPP. *Webster*, 735 F.2d at 841. Simply naming a municipal defendant is not sufficient to be the foundation of a plausible claim under *Monell*.

For the foregoing reasons, Jones's claims against the City of New Orleans are frivolous and otherwise fail to state a claim for which relief can be granted. The claims must be dismissed pursuant to § 1915(e) and § 1915A.

### C.   The Parish of Orleans

Jones has also included the Parish of Orleans as a defendant in this case. For similar reasons applied to the City under *Monell*, his claims against the Parish also are frivolous and otherwise fail to state a claim for which relief can be granted.

As discussed previously, to establish liability under § 1983 against a local governing body, like Orleans Parish, the plaintiff must point to a Parish policy or custom or breach of duty that caused the alleged constitutional deprivation. *See Monell*, 436 U.S. at 690-91; *Bennett v. City of Slidell*, 728 F.2d 762, 767-68 (5th Cir. 1984). Jones has not and cannot do so in this case where his claims are directed to OPP personal and medical staff arising from his medical treatment at the jail. *See O'Quinn v. Manual*, 773 F.2d 605, 609 (5th Cir. 1985) (administration of the jail is province of the sheriff).

It is well settled that, in Louisiana, the Parish is not responsible for the torts, constitutional or otherwise, committed by the Sheriff and his employees. *Salvagio v. Doe*, No. 13-5182, 2013 WL 6623921, at *2-3 (E.D. La. Dec. 16, 2013) (Vance, C.J.) (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999)); *Broussard v. Boudoin*, No. 03-3040, 2004 WL

223984, at *1 (E.D. La. Jan. 29, 2004) (Shushan, M.J.); *Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 613 (E.D. La. 1998).  Without some legal responsibility in place, Jones cannot state a basis for liability on the part of the Parish arising from the actions of the medical staff or the conditions at the OPP.  He has not and would not be able to point to any parish policy or custom related to the events within the prison for which the Parish has no control as would be required to support any claim of liability against the Parish itself under *Monell*.

Jones's claims against Orleans Parish must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A.

### D.   Secretary LeBlanc

Jones names as a defendant, James LeBlanc, Secretary of the DOC, as a defendant in this action in both his official and individual capacities.  The claims against LeBlanc in either capacity are frivolous and fail to state a cognizable § 1983 claim for the following reasons.

### 1.   Official Capacity

In his official capacity, Secretary LeBlanc is not a person suable under § 1983 and is otherwise immune from suit for monetary damages.

Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his constitutional rights.  42 U.S.C. § 1983.  A plaintiff must prove both the constitutional violation and that the action was taken by a "person" under color of state law.  *Flagg Bros., Inc.*, 436 U.S. at 156; *Polk County v. Dodson*, 454 U.S. 312 (1981).  However, a state actor, like Secretary LeBlanc, in his official capacity is not considered to be a person for purposes of suit under § 1983.  *Will v. Michigan Dept. of St. Police*, 491 U.S. 58 (1989); *Stotter v. University of Texas*, 508 F.3d 812, 821 (5th Cir. 2007).  In keeping with its long-standing doctrine, the Supreme Court has held that, when a state actor is sued in his official capacity, the action is considered to be one taken against the department he represents.  *See Monell*, 436 U.S. at 690 n.55.

In this case, LeBlanc is employed by the Louisiana Department of Corrections ("DOC"), which is a department within the Louisiana state government.  La. Rev. Stat. Ann. § 36:401.  For Eleventh Amendment purposes, the DOC is considered an arm of the state since any money judgment against it or its subdivisions necessarily would be paid from state funds.  *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985).  Therefore, suit against the State, the DOC, and its employees like LeBlanc in their official capacities implicates the Eleventh Amendment immunity doctrine.  *Muhammad v. Louisiana*, No. 99-2694 c/w 99-3742, 2000 WL 1568210 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Correctional Center*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560 and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State.  *Pennhurst State School v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F .2d 183, 185-86 (5th Cir.1986).  A state may expressly waive this Eleventh Amendment sovereign immunity. See *Edelman v. Jordan,* 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dept. of Highways,* 780 F.2d 1268, 1271-73 (5th Cir.1986).  However, the State of Louisiana has not done so.

To the contrary, La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state ... shall be instituted in any court other than a Louisiana state court."  Accordingly, the Court is without jurisdiction to hear the plaintiff's claims for monetary relief against the State of Louisiana, the DOC, or Secretary LeBlanc in his official capacity.  *See Warnock v. Pecos County, Tx.*, 88 F.3d 341, 343 (5th Cir. 1996).  The claims against LeBlanc in his official capacity must be dismissed as frivolous for lack of jurisdiction, for failure to state a claim for which relief can be

granted, and/or for seeking monetary relief against immune defendants in accordance with §
1915(e), § 1915A, and § 1997e.

## 2.   **Individual Capacity**

Jones has not alleged that Secretary LeBlanc had any role in the medical treatment he
received in or the conditions at OPP, a prison that is not under the control of the DOC.[6]  Proof of
an individual defendant's personal involvement in the alleged wrong is a prerequisite to his
liability on the claim for damages under §1983.  A state actor may be liable under § 1983 only if
he "was personally involved in the acts causing the deprivation of his constitutional rights or a
causal connection exists between an act of the official and the alleged constitutional violation."
*Douthit v. Jones*, 641 F.2d 345 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*,
611 F.2d 120 (5th Cir. 1980).

Secretary LeBlanc cannot be held liable when he was not involved in the medical care and
actions by employees at OPP.  The Court finds that Jones's claims against Secretary LeBlanc in
his individual capacity are frivolous and otherwise fail to state a claim for which relief can be
granted  pursuant to § 1915(e), § 1915A, and § 1997e.  The claims should be dismissed.

## E.   **Sheriff Gusman, Warden Ruiz, and Captain Franklin in Official Capacities**

Jones also names Sheriff Gusman, Warden Ruiz, and Captain Frankin as defendants in this
action in both their individual and official capacities.  Jones, however, has not set forth any
allegations against the Sheriff, the Warden, or the Captain to invoke liability under § 1983 in their
official capacities.  His claims against these defendants in their official capacities should be
dismissed.

---

[6]*See* La. Rev. Stat. Ann. § 15:702 (defining the DOC).

"Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) (citing *Monell*, 436 U.S. at 691 n.55). Accordingly, the official-capacity claims against these defendants would in reality be claims against the local governmental body they serve, which is Orleans Parish. As previously discussed in detail above, Jones has failed to allege a *Monell* claim against the Parish of Orleans and necessarily is unable to do so against the Sheriff, the Warden, and the Captain. Where the plaintiff fails to allege that the purported violations at issue resulted from an official policy or custom, dismissal of such claims is appropriate. *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 533 (5th Cir. 1996); *Causey v. Parish of Tangipahoa*, 167 F. Supp. 2d 898, 905-06 (E.D. La. 2001).

Jones's claims against Sheriff Gusman, Warden Ruiz, and Captain Franklin should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted in accordance with § 1915, § 1915A and § 1997e.

### F. Nurses Spencer and Washington in Official Capacities

Jones has named Nurses Spencer and Washington in their official capacities based on the allegations related to their care and treatment of his medical needs at the prison. It is unclear from the pleadings whether Spencer and Washington are employees of Orleans Parish through the Sheriff's Office or of the private entity that now provides medical care at the OPP facilities. In either case, Jones's claims against the Nurses in an official capacity are frivolous and otherwise fail to state a claim for which relief can be granted under § 1983.

As with the employees of the Sheriff's Office, suit against the Nurses in an official capacity would be suit against Orleans Parish. *Burge*, 187 F.3d at 466 (citing *Monell*, 436 U.S. at 691 n.55). Jones has not stated a non-frivolous claim under *Monell* against Orleans Parish and would be

unable to do so against the nurses.  Jones has not alleged that the Nurses' actions resulted from an official policy or custom, dismissal of such claims is appropriate.  *See Castro Romero*, 256 F.3d at 355; *Meadowbriar Home for Children, Inc.*, 81 F.3d at 533; *Causey*, 167 F. Supp. 2d at 905-06.

As employees of a corporate medical provider at the prison, a similar result must be reached.  A corporate medical provider and its employees may be liable under § 1983 where there is an official sanction of their duties and corporate conduct or practice lead to the constitutional violation.  *See Bishop v. Karney*, 408 F. App'x 846, 848 (5th Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 49-50 & 54-57 (1988)); *accord Filarsky v. Delia*, __ U.S. __, 132 S. Ct. 1657, 1661 (2012) (a private person retained by the state government to carry out its work can be sued as a state actor under § 1983); *Richardson v. McKnight*, 521 U.S. 399 (1997) (employees of a private corporation who perform traditional government functions at the prisons can be liable under § 1983).  The test to determine liability for a corporate medical care provider under § 1983 is similar to that for municipal or local government liability.  *See Phillips v. Corrs. Corp. of America*, No. 02-766, 2006 WL 1308142, at *3 (W.D. La. May 10, 2006) (citing *Olivas v. Corrs. Corp. of America*, 408 F. Supp. 2d 251, 254-55 (N.D. Tex .2006)); *see also*, *Monell*, 436 U.S. at 694.  To hold a private corporation performing a government function liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that (1) there is a policymaker who could be held responsible, through actual or constructive knowledge, for enforcing a policy or custom that caused the claimed injury; (2) the corporation has an official custom or policy which could subject it to § 1983 liability; and (3) the corporate action was taken with the requisite degree of culpability with a direct causal link between the action and the deprivation of federal rights.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

In this case, Jones has not made any such allegations against the Nurses.  His claims against them are particularized acts or failures to act by them individually.  He has not stated an official

capacity claim against them or their employer and suit against them in their official capacities must be dismissed as frivolous or for failure to state a claim for which relief can be granted.

### G.    Sheriff Gusman in His Individual Capacity

Jones names Sheriff Gusman in his individual capacity, although he testified that he named the Sheriff for his role as head of the jail.  As discussed previously, to recover under § 1983 for individual liability, Jones must identify both the constitutional violation and the responsible person acting under color of state law.  *See Flagg Bros., Inc.*, 436 U.S. at 156.  Also, proof of an individual defendant's personal involvement in the alleged wrong is a prerequisite to liability under §1983. *Douthit*, 641 F.2d at 345.   Thus, supervisory officials, like Sheriff Gusman cannot be held responsible pursuant to § 1983 under any theory of *respondeat superior* or simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights.  *See Alton v. Tex. A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *see also*, *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or respondeat superior liability.").   A defendant is liable under § 1983 only if he had personal involvement in the alleged unconstitutional act.  *Douthit*, 641 F.2d at 346.

In this case, Jones testified that Sheriff Gusman was not personally involved with his medical care or personally advised by him of any condition to which he was exposed.  Instead, Jones seems to identify these prison officials in their supervisory capacity and roles at the prison. This is not an appropriate basis for liability under § 1983.

Jones also has not alleged that he has suffered any injury directly resulting from any order, training, or other policy implemented by Sheriff Gusman that would create a vicarious liability under § 1983 in the Sheriff's supervisory role.  *See Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 1991); *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also*, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25

(1988).  As will be discussed further, Jones has not established a denial of adequate medical care that would be attributable to any policy at the prison and therefore could not establish a vicarious liability on the part of the Sheriff as a supervisory official.

Jones has not alleged a personal action or connection that would render Sheriff Gusman liable under § 1983 or liable for the actions or inactions of the prison personnel or medical staff at the jail.  For these reasons, Jones's claims against the Sheriff in his individual and supervisory roles over the prison are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

### H.        Spencer, Washington, Franklin and Ruiz in their Individual Capacities

Having resolved the foregoing matters, there remains before the Court the claims of inadequate medical care by Jones against Nurses Spencer and Washington, Captain Franklin and Warden Ruiz, each in their individual capacities.  Jones claims that each of these individuals showed indifference to his medical needs and/or ignored his requests to see a doctor for his unhealed leg and that Spencer and Franklin took his wheelchair away before his leg was healed. Jones asserts that Washington and Ruiz also failed to take immediate action to get him an appointment with the doctor or to improve his physical condition.  This, he claims, resulted in additional pain and infection which led to a second surgery and additional hospital care to address the infection in his leg and the infection occurring later in his arm at the PICC site.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required."  *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*

A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same). In applying this standard, the courts have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear

that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). In addition, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Jones's discontent and generalized complaints about his care also fails to demonstrate an indifference to his medical needs. He complains of nothing more than routine delay in his ability to see a doctor, rather than being able to see a doctor at his command. His expectation that he be allowed immediately to see a doctor for routine examinations is more than is required by the Constitution and is beyond that of what is available even in the free world. The Constitution requires that prisoners receive adequate and "not optimal" medical treatment. *Spriggens v. LaRavia*, No. 11-2266, 2012 WL 1135845, at *4 (E.D. La. Apr. 4, 2012). It is not the role of this Court to second guess the medical decisions and treatment he is provided simply because Jones is disappointed in his progress or decline as it may be. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). An inmate like Jones must establish more than just a disagreement with the level of care he is receiving even if the care he is receiving is unsuccessful. *Davidson v. Tex. Dept. of Crim. Justice*, F. App'x 963, 965 (5th Cir. 2004) (citing *Stewart*, 174 F.3d at 534 & *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)).

Jones alleges that Nurse Spencer, accompanied by Captain Franklin, took his wheelchair away from him allegedly because she was upset with other inmates who were selling medication on the tier.  However, Jones ultimately conceded that Nurse Spencer removed the wheelchair because his paperwork did not authorize him to have the chair.  He also indicated that he was given a walker in its place, although he preferred the chair.

Jones cannot state a claim of intentional indifference on the part of Nurse Spencer or Captain Franklin when they removed the wheelchair in accordance with his treatment records.  Although Jones had been assigned a wheelchair in February of 2015 does not mean that the treatment plan could not change to provide that he be given a walker in its place.  His disagreement with that treatment or belief that the change caused his leg to become infected three weeks later is not enough to demonstrate a basis for liability against Spencer or the Captain under § 1983.

Jones himself explained that the infection started after he began walking more and moving around in the prison and encountered more unsanitary places then he had before.  Thus, his infection was not caused by any action by Spencer or the Captain taken in compliance with his treatment records, but instead by his movements in the prison.

Jones also indicated that, at some point, he informed Warden Ruiz about the condition of his leg and the pain he was having.  Jones assumes that the Warden did not take any action because he was busy with other matters at the prison and did not get back with him.  Jones also did not contact the Warden to follow-up with any efforts he may have made to contact the medical staff.  Jones indicates that, when he spoke to the Warden, he also was in contact with the medical staff and continuing to complain that he needed to see a doctor.  Thus, any delay on the part of the Warden in taken action to assist him did not derail the course of treatment Jones received from the medical staff.  As noted above, Jones did not have a constitutionally protected right to faster medical care than that which his condition called for by the medical professionals.

According to Jones, the seriousness of his condition, including the infection and alleged bulging bone, was recognized by the medical staff and other personnel with whom he spoke, including the Warden and Nurse Washington.  Unfortunately, Nurse Washington's negligence led to an additional delay in getting his appointment to see the doctor.  However, when she realized her error and the alleged worsening of the condition of his leg, she arranged for Jones to be seen by the doctor that same day.  As noted above, while not an optimal circumstance, the delay caused by the negligence of a prison official or medical staff is not enough to establish an intentional indifference or to state a constitutional violation.

Under the circumstances of his case, Jones has failed to allege an intentional indifference by the named defendants and his claims against Spencer, Washington, Franklin, and Ruiz, must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted under § 1983.

I.      **Conditions of Confinement**

Jones also alleges that the unsanitary conditions at the old jail and the negligence of unidentified nurses there caused him to get an infection at the PICC site he had after his second surgery in the Summer of 2015.  He also stated that he did not clean the site himself, and instead relied solely on the nurses there to clean it.  He complains that they apparently did not do a good job since his arm became infected.

As noted above, even if he did receive negligent or substandard care for his PICC site, this is not sufficient to state a claim of medical indifference under § 1983.  In addition, Jones has failed to set forth a non-frivolous claim arising from the unspecified conditions at the old part of the jail.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' ... or which 'involve the unnecessary and wanton

infliction of pain.'"  *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted).
"[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not
unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of
the penalty that criminal offenders pay for their offenses against society."  *Rhodes v. Chapman*,
452 U.S. 337, 347 (1981).

The federal courts have long recognized that serving time in prison "is not a guarantee that
one will be safe from life's occasional inconveniences."  *Holloway v. Gunnell*, 685 F.2d 150, 156
(5th Cir. 1982).  The Courts also have repeatedly held "that the Constitution does not mandate
prisons with comfortable surroundings or commodious conditions."  *Talib*, 138 F.3d at 215 (citing
*Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).  In
keeping with this philosophy, the federal courts have recognized that certain problems endemic  to
large institutions such as dust, mold, and stale air do not amount to a constitutional violation.  *See*,
*e.g.*, *White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison
v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399,
at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D.
La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012).

Furthermore, even assuming that Jones's infections were contracted from or associated
with the conditions at the old jail, he has not established that prison officials knew of an actual risk
of serious harm to his person or intentionally ignored that risk.  Thus, even if there were unsanitary
conditions on the tier where he was assigned, he has not stated a constitutional violation.  *See
McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's
claim that the shower he was forced to share with other inmates is polluted and covered in mold
and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a
constitutional violation.").  The jurisprudence has repeatedly held that the general unsanitary

conditions, even the presence of mold and dampness in a prison setting, does not render an inmate's confinement unconstitutional.  *See*, *e.g.*, *Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)).

Thus, Jones's conclusory allegations about unsanitary conditions fail to establish constitutional violations.  *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib*, 138 F.3d at 215).  "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, fifty-two inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitary living quarters, failed to state a claim.).  As one federal appellate court has concluded, "[l]eaky toilets and puddles are unpleasant but not unconstitutional." *Smith v. Melvin*, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. Jul. 26, 1996); *accord Davis*, 2010 WL 890980, at *9; *Wilkerson v. Champagne*, No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

For the foregoing reasons, Jones's claims are frivolous and otherwise failed to present a claim for which relief can be granted. The claims should be dismissed for this reason pursuant to § 1915, § 1915A, and § 1997e.

## IV.    Defendants' Motions to Dismiss (Rec. Doc. Nos. 20 & 30)

The Court has addressed Jones's claims asserted against the defendants the City of New Orleans, Nurse Spencer, and Nurse Washington and is recommending that the claims against each of these defendants be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to its statutory review above. The Court's findings and recommendations render the pending Motions to Dismiss (Rec. Doc. Nos. 20 & 30) filed by these defendants **MOOT** and the motions should be dismissed for that reason.

## V.    Recommendation

It is therefore **RECOMMENDED** that Jones's § 1983 claims against the defendants, the City of New Orleans, the Orleans Parish Police Jury and Orleans Parish and against Sheriff Gusman, Secretary LeBlanc, Nurse Spencer, Nurse Washington, Warden Ruiz, and Captain Franklin, each in their individual and official capacity, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

It is further **RECOMMENDED** that the **Motion to Dismiss (Rec. Doc. No. 20)** filed by defendant City of New Orleans and the **Motion to Dismiss Pursuant to Rule 12(b)(6) for Failure to State Claim (Rec. Doc. No. 30)** filed by the defendants Nurse Spencer and Nurse Washington, be **DISMISSED as moot** in light of the recommendation that the claims against these defendants be dismissed on other grounds.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days**

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[7]

New Orleans, Louisiana, this 5th day of October, 2016.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[7]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.